**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN: 249203)
ak@kazlg.com
Gil Melili, Esq. (SBN: 337116)
gil@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone:   (800) 400-6808
Facsimile:   (800) 520-5523

[Additional Counsel on Signature Line]

*Attorneys for Plaintiff,*
Amanda Alcantar

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA M. ALCANTAR, Individually and On Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>         v.<br><br>FLAGSTAR BANK, N.A.;<br><br>                 Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>1) **REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. §§ 2601, *ET SEQ.*; AND**<br>2) **UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.***<br><br>**JURY TRIAL DEMANDED** |

Amanda M. Alcantar ("Plaintiff") brings this class action Complaint, on behalf of herself and others similarly situated, and by and through her attorneys, against Flagstar Bank, N.A. ("Defendant" or "Flagstar") and alleges as follows:

## **INTRODUCTION**

1. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

2. As detailed further below, Plaintiff alleges that Flagstar failed to conduct a "reasonable investigation" of Plaintiff's account and also failed to provide her with a complete record of Plaintiff's file in response to her qualified written request, in violation of the Real Estate Settlement Procedures Act.

3. While many violations are described below with specificity, this Complaint alleges violations of each statute cited in its entirety.

4. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

5. Congress found "that significant reforms in the real estate settlement process are needed to ensure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). To address this finding, Congress passed the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*., ("RESPA") in 1974.

6. The Consumer Financial Protection Bureau ("CFPB") is authorized by Congress to supervise and enforce compliance of RESPA. 12 U.S.C. § 2617(a). As a result, the CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA's implementing regulation.

7.      Under RESPA and Regulation X, a loan servicer like Defendant must provide borrowers with specific account information available to it in the regular course of business upon receiving a qualified written request ("QWR") from the borrower. 12 U.S.C. § 2605(e)(1)(A).

8.      A QWR can be either a Request for Information ("RFI") or a Notice of Error ("NOE"). *See St. Claire v. Ditech Fin., LLC*, No. 1:17-CV-3370-AT-JFK, 2018 WL 4850127, at *3 (N.D. Ga. Sept. 21, 2018), *reconsideration denied in* No. 1:17-CV-3370-AT, 2018 WL 8459491 (N.D. Ga. Oct. 23, 2018).

9.      A servicer's response to a QWR differs depending on whether the QWR is an RFI or an NOE. *Compare* 12 U.S.C. § 2605(e)(2)(B) *and* 12 C.F.R. § 1024.35 *with* 12 U.S.C. § 2605(e)(2)(C) *and* 12 C.F.R. § 1024.36.

10.     Within five (5) days of receiving a QWR, a servicer must acknowledge receipt unless the action requested is taken within such period. 12 U.S.C. § 2605(e)(1)(A). In the absence of acting within five (5) days of its receipt of a QWR, a servicer must undertake its responsibilities under RESPA no later than thirty (30) days of its receipt of the QWR. 12 U.S.C. § 2605(e)(2).

11.     A servicer must respond to an NOE by: (1) correcting the information and providing the borrower with written notice of the correction; or (2) conducting a "reasonable investigation" and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, with reasons for the determination. 12 U.S.C. § 2605(e)(2)(B); 12 C.F.R. § 1024.35(e)(1)(i)(A)–(B). On the other hand, a servicer must respond to an RFI by: (1) providing the requested information; or (2) conducting a "reasonable search" for the requested information, providing the borrower with a written notification explaining the basis for the servicer's determination that the requested information is "not available." 12 U.S.C. § 2605(e)(2)(C); 12 C.F.R. § 1024.36(d)(1)(i)–(ii).

12.     In its official commentary to Regulation X, the CFPB outlines what constitutes as information that is "not available." Information is "not available" if:

"[(1.)] The information is not in the servicer's control or possession, or [(2.)] The information cannot be retrieved in the ordinary course of business through reasonable efforts." 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

13.     As an example of "available" information, the CFPB provides the following in its official commentary to Regulation X:

> A borrower requests **a copy of a telephonic communication with a servicer.** The servicer's personnel have access in the ordinary course of business to **audio recording files** with organized recordings or transcripts of borrower telephone calls and can identify the communication referred to by the borrower through reasonable business efforts. **The information requested by the borrower is available to the servicer.**

12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii) (emphasis added).

14.     Flagstar has failed to fulfill its duty to provide all information available to it in the regular course of business to Plaintiff upon receipt of Plaintiff's RFIs.

15.     As alleged in greater detail below, Flagstar has demonstrated a "pattern or practice" of failing to adequately respond to borrowers' requests for account information, which makes Flagstar liable for statutory damages in an amount up to $2,000 for each failure to adequately respond. 12 U.S.C. § 2605(f).

16.     Notwithstanding this significant failure to abide by its statutory duty, and despite Plaintiff having informed Defendant of its failure, Defendant continued to disregard Plaintiff's request and, upon information and belief, other borrowers' reasonable requests for account information, including producing requested audio recordings of telephone conversations about Plaintiff's account.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to RESPA, 12 U.S.C. § 2614, and generally pursuant to 28 U.S.C. § 1331 because the action arises from violations of federal law.

18.     This Court has personal jurisdiction over Defendant because Defendant conducts business in California and maintains sufficient contacts with the state and

4

within this federal district.

19.     Venue is appropriate in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in Placer County, California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all relevant times.

## PARTIES

20.     At all relevant times, Plaintiff, an individual, is a resident and citizen of Roseville, California.

21.     Defendant is a mortgage servicing company and bank that maintains its headquarters in Hicksville, New York, and its regional headquarters in Troy, Michigan.[1]

22.     Defendant is a subsidiary of New York Community Bancorp, Inc.[2]

23.     As of March 31, 2023, Defendant had $123.8 billion of assets, $83.3 billion of loans, $84.8 billion in depositions, and $10.8 billion in stockholders' equity.[3]

24.     Defendant "operates 435 branches, including strong footholds in the Northeast and Midwest and exposure to high growth markets in the Southeast and West Coast."[4]

25.      "Flagstar Mortgage operates nationally through a wholesale network of approximately 3,000 third-party mortgage originators."[5]

## FACTUAL ALLEGATIONS

26.     Plaintiff incorporates by reference all the above paragraphs of this Complaint as if fully stated herein.

---

[1] https://www.flagstar.com/about-flagstar.html (last visited July 12, 2023).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*

27. Defendant serviced Plaintiff's mortgage loan for a residence located in Roseville, California, all times relevant hereto through the subservicer, Lakeview Loan Servicing, LLC.

28. In or around 2020, Plaintiff entered a mortgage forbearance with Defendant, pursuant to the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. §§ 9056, *et seq.* (the "CARES Act"). The forbearance was set to expire in October of 2021.

29. In or around October 2021, Plaintiff contacted Defendant to request a reduction in her monthly mortgage payments due to financial hardship.

30. Plaintiff also called Defendant several times between October 2021 and February 2022 to follow-up on her request for a reduction in her monthly mortgage payments.

31. In or around February 2022, Plaintiff received a purported new mortgage contract from Defendant. The new mortgage contract did not change the 3.75% interest rate on Plaintiff's mortgage. And, contrary to Plaintiff's wishes, the monthly mortgage payment appeared to be higher than what Plaintiff had normally paid up until that point.

32. Disappointed in Defendant's failure to lower her monthly mortgage payments, Plaintiff requested for her mortgage to be placed in a partial claim status instead.

33. In or around March 2022, Defendant sent Plaintiff a contract for the partial claim, which was signed and returned by Plaintiff to Defendant shortly thereafter.

34. In or around April 2022, Plaintiff called Defendant to determine whether Defendant received her signed partial claim contract. During that call, Plaintiff was informed that Defendant had received, processed and recorded the partial claim contract. Plaintiff was also informed that the new terms of the mortgage loan would take effect and would appear on Plaintiff's next statements after she submitted her May 2022 payment.

35.    Plaintiff attempted to make her May 2022 mortgage loan payment in a timely manner online. However, the online payment system did not permit Plaintiff to make said payment. Consequently, Plaintiff called Defendant on Monday, May 2, 2022, and submitted her May 2022 payment over the phone.

36.    On or about May 21, 2022, Plaintiff received her monthly statement for the mortgage loan, and to her surprise, the new loan terms she had agreed to with Defendant were nowhere to be found.

37.    Instead, Plaintiff's statement indicated that she was delinquent on her loan with $90,125.66 due immediately.

38.    In response, Plaintiff submitted a consumer complaint to the Consumer Financial Protection Bureau ("CFPB") on May 21, 2022, recounting her experiences with Defendant.

39.    On June 9, 2022, Defendant replied to Plaintiff's CFPB complaint, stating that Plaintiff's partial claim was approved "on March 14, 2022, with an interest rate of 3.75% fixed rate for a 331-month term with monthly installments of $3,602.83." The same letter also explained that the partial claim was recorded with Placer County on April 4, 2022.

40.    Defendant's letter further explained that "an error occurred, resulting in a delay in completing the partial claim process."

41.    On September 22, 2022, Plaintiff, through counsel, mailed a QWR via certified mail to Defendant pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and Regulation X, 12 C.F.R. §§ 1024.35, 1024.36.

42.    Plaintiff's QWR was mailed with a signed authorization to furnish and release information to her counsel, as permitted in 12 U.S.C. § 2605(e)(1)(A).

43.    In the QWR, Plaintiff included her name, her home address, her loan account number, a statement disputing the validity of her debt, and requests for documents and information associated with her account, including: "[a] copy of any and all recordings of [Plaintiff] or any other person concerning [Plaintiff's] account"

and "[a] copy of any and all transcripts of conversations with [Plaintiff] or any other person concerning [Plaintiff's] account."

44.     The QWR was both a Notice of Error and a Request for Information pursuant to 12 U.S.C. § 2605(e) and 12 C.F.R. §§ 1024.35, 1024.36, because Plaintiff disputed the validity of the debt she allegedly owed and because she requested information regarding the servicing of her loan.

45.     The QWR was received by Defendant on October 5, 2022.

46.     Defendant did not provide a written response acknowledging receipt of Plaintiff's correspondence within five (5) days, as required under 12 U.S.C. § 2605(e)(1)(A).

47.     On or about October 27, 2022, Plaintiff's counsel received a written correspondence dated October 18, 2022, from Defendant in which Defendant indicated that Defendant had added Plaintiff's counsel as an authorized third party and had "researched the error [Plaintiff] reported and can confirm that there was no error in regards to the validity of the debt."

48.     In its response, Defendant also provided information relating to the loan, information about the monthly payment amounts, interest rate information, etc. However, Defendant failed to provide any of the requested audio recordings or transcripts of said recordings.

49.     Upon information and belief, Defendant failed to provide complete documentation in its possession that was responsive to Plaintiff's QWR.

50.     With regard to the information Plaintiff requested but was not provided, Defendant wrote: ". . . we are unable to honor the request for any notes, all documents regarding notice of payments to vendors for assessed costs, including invoices and receipts for fees and costs, copy of complete file including all account notes, screens, information or documents maintained in the software system, copy of any and all recordings, copy of any and all transcripts because it is considered overbroad or unduly burdensome to provide …"

51.     Defendant's response also indicated that the facsimile/e-mail fee from August 1, 2022, would remain on the account "as this was a fax/email fee in the amount of $5.00."

52.     Due to Defendant's failure to provide the requested recordings, Plaintiff, through her counsel, sent a follow-up letter to Defendant via certified mail on November 16, 2022.

53.     In that follow-up letter, Plaintiff's counsel explained Plaintiff's concerns regarding Plaintiff's partial claim contract. Plaintiff's counsel also specifically requested that Defendant provide audio recordings, which the CFPB's commentary to Regulation X specifically contemplates as requested information. *See* 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

54.     The follow up correspondence was reasonably sent by Plaintiff, through counsel, in an effort to obtain Defendant's compliance with RESPA. It was mailed by Plaintiff's counsel to Defendant through the United States Postal Service via Certified Mail, costing Plaintiff out of pocket $8.62. As a result of the follow up letter, Plaintiff incurred actual damages as a result of seeking Defendant's compliance with RESPA.

55.     Plaintiff's follow up letter was received by Defendant on November 21, 2022.

56.     On November 23, 2022, Defendant sent Plaintiff's counsel a letter via U.S. Mail confirming receipt of the follow-up letter and indicating that it would respond to the follow up letter "within 30 business days from the received date."

57.     On November 29, 2022, Defendant sent Plaintiff's counsel a letter via U.S. Mail in response to Plaintiff's follow up letter now claiming, "we are unable to provide the requested recordings and transcripts of recordings . . . because it is confidential, proprietary, and/or privileged; it is unique to each employee and their personnel file and not a component of the loan servicing file."

58.     As of the date of the filing of this Complaint, Plaintiff has not received any other documents or a supplemental response from Defendant relating to the QWR,

9

and Defendant has willfully failed to provide any of the requested audio recordings to Plaintiff.

59. Defendant's refusal to provide requested information to borrowers who submit valid QWRs is, upon information and belief, a matter of standard business policy and practice for Defendant.

60. Plaintiff is informed and believes and hereupon alleges that Defendant has refused to produce recordings for possibly hundreds if not thousands of customers that have requested them within the last few years.

61. Defendant has faced similar backlash for its failure to comply with the CFPB's mortgage servicing rules in the past. In 2014, the CFPB issued a press release indicating that Defendant "illegally block[ed] borrowers' attempts to save their homes [and that at] every step in the foreclosure relief process, [defendant] failed borrowers." This included, among other things, taking "excessive time to process borrowers' applications for foreclosure relief, fail[ing] to tell borrowers when their applications were incomplete, den[ying] loan modifications to qualified borrowers, and illegally delay[ing] permanent loan modifications."[6] Consequently, Flagstar was ordered to "halt its illegal activities, pay $27.5 million to victims, and pay a $10 million fine" for its past conduct.[7]

62. Additionally, Defendant's Better Business Bureau profile reveals several reviews from other similarly situated consumers who have experienced similar troubling conduct from Defendant.[8]

63. Plaintiff is informed and believes and hereupon alleges that Defendant can easily produce the requested audio recordings through reasonable business efforts.

---

[6] https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-against-flagstar-bank-for-violating-new-mortgage-servicing-rules/ (last visited June 30, 2023).
[7] *Id.*
[8] https://www.bbb.org/us/mi/troy/profile/financial-services/flagstar-bank-0332-6000256/customer-reviews (last visited June 30, 2023).

64.     Further, Defendant has no proper basis to withhold from Plaintiff its audio recordings of conversations with Plaintiff on the basis that they are proprietary, privileged or confidential.

65.     Plaintiff is also informed and believes and hereupon alleges that Defendant did not conduct a reasonable search of each consumer's request for information to determine if the requests were overly broad and unduly burdensome.

66.     Plaintiff recalls having only a handful of telephonic conversations with Defendant, which means the production of the recordings was neither overly broad nor unduly burdensome.

67.     Upon information and belief, businesses like Defendant which record telephone calls of conversations of their customers often have quick and easy access to said audio recordings for quality assurance, compliance, or training purposes.[9]

68.     Defendant's failure to provide the requested information after *two* requests demonstrates a pattern or practice of non-compliance with RESPA, because Defendant denied multiple requests for the audio recordings, providing only a boilerplate and unjustified responses that it believed the requested audio recordings were beyond the scope permitted by RESPA, overly broad or unduly burdensome.

69.     Further, Plaintiff requested the recordings *twice*, but Defendant failed to produce the recordings each time, which further illustrates Defendant's pattern and practice of non-compliance.

70.     Defendant's failure to produce the audio recordings inhibits Plaintiff's efforts to remedy issues with her mortgage.

71.     Plaintiff continues to want a copy of, or access to, the audio recordings and/or transcripts that were requested from Defendant.

---

[9] For example, Talkdesk offers call recording software that allows its clients to access "[s]ynchronized playback of voice and screen recordings paired with live monitoring" and "[p]ause and resume live recordings, customize recording and retention settings, and store calls for as long as [they] need them[.]" https://www.talkdesk.com/cloud-contact-center/wem/interaction-recording/ (last accessed July 21, 2023).

72.    Upon information and belief, Defendant will continue to reject any future request from Plaintiff for production of audio recordings and/or transcripts of calls between Plaintiff and Defendant's representatives.

73.    Plaintiff cannot be certain that Defendant will produce audio recordings of past calls and even future calls until and unless the Court grants an injunction requiring Defendant to comply with Plaintiff's proper QWRs requesting audio recordings from Defendant.

74.    As a direct and proximate result of Defendant's conduct or omissions in response to Plaintiff's requests, Plaintiff suffered actual damages that include, but are not limited to, postage expenses and attorneys' fees, in an amount to be proven at trial.

## CLASS ACTION ALLEGATIONS

75.    Plaintiff brings this action on behalf of herself individually and on behalf of all others similarly situated, pursuant to Federal Rule Civil Procedure 23(b)(1), (b)(2) and/or (b)(3).

76.    The putative class (the "Class") that Plaintiff seeks to represent is composed of:

> All persons within the United States who have or have had a mortgage loan serviced by Defendant and who, within three (3) years of filing this Complaint, have requested copies of audio recordings or transcripts of phone calls between themselves and Defendant pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R. § 1024.36 and who have subsequently been denied access to those audio recordings or transcripts by Defendant.

77.    Plaintiff also seeks to represent a California subclass (the "Subclass") composed of:

> All persons within California who have or have had a mortgage loan serviced by Defendant and who, within four (4) years of filing this Complaint, have requested copies of audio recordings or transcripts of phone calls between themselves and Defendant pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12

12

C.F.R. § 1024.36 and who have subsequently been denied access to those audio recordings or transcripts by Defendant.

78.　Excluded from the Class and Subclass are any of Defendant's officers, directors, employees, affiliates, legal representatives, attorneys, heirs, and assigns, and any entity in which Defendant has a controlling interest.　Judicial officers presiding over this case, its staff, and immediate family members, are also excluded from the Class and Subclass.

79.　Class and Subclass members are so numerous that joinder of all members is impracticable. While the exact number of the Class and Subclass members is unknown to Plaintiff at this time, such information can be ascertained through discovery from records maintained by Defendant.

80.　There is a well-defined community of interest among the Class and Subclass members because common questions of law and fact predominate, Plaintiff's claims are typical of the Class and Subclass members, and Plaintiff can fairly and adequately represent the interests of the Class and Subclass.

81.　Common questions of law and fact exist as to all Class and Subclass members and predominate over any questions affecting solely individual Class and Subclass members.　Among the questions of law and fact common to the Class and Subclass are:

a) Whether Defendant failed to provide audio recordings of telephone calls between Defendant and Class and Subclass members as required under RESPA;

b) Whether Defendant failed to provide documents requested by Class and Subclass members as required under RESPA;

c) Whether Defendant failed to conduct a "reasonable investigation" as required pursuant to 12 C.F.R. § 1024.36(d)(1)(i)–(ii);

d) Whether Plaintiff and the Class and Subclass are entitled to actual and/or statutory damages under 12 U.S.C. § 2605(f);

e) Whether Defendant demonstrates a "pattern or practice" of failing to respond to borrowers' QWRs, including NOEs and RFIs.

f) Whether Defendant's conduct violates 12 U.S.C. §§ 2601, *et seq.*; and

g) Whether Plaintiff and the Subclass members are entitled to injunctive relief as sought herein.

82. Plaintiff's claims are typical of those of the other Class and Subclass members because Plaintiff, like every other Class and Subclass member, requested documents and audio recordings or transcripts of telephone calls with Defendant, and Defendant refused to provide them or ignored the requests.

83. Plaintiff will fairly and adequately protect the interests of the Class and Subclass. Moreover, Plaintiff has no interest that is contrary to or in conflict with those of the Class and Subclass she seeks to represent during the Class period.

84. In addition, Plaintiff has retained competent counsel experienced in class action litigation to protect the interests of the Class and Subclass and to prosecute this action vigorously.

85. The prosecution of separate actions by individual members of the Class and Subclass and would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass members and lead to repetitious trials of the numerous common questions of fact and law throughout the United States. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

86. Proper and sufficient notice of this action may be provided to the Class and Subclass members through direct mail and email.

87. The Class and Subclass members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would not be remedied without certification of the Class and Subclass.

88.     Absent certification of this action as a class action, Plaintiff and members of the Class and Subclass will continue to be harmed as a result of Defendant's refusal to comply with RESPA and Regulation X.

## FIRST CAUSE OF ACTION

### Violations of Real Estate Settlement Procedures Act

### 12 U.S.C. §§ 2601, *et seq.*

### (As to the Class and Subclass)

89.     Plaintiff re-alleges and incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

90.     Plaintiff's loan was at all times relevant, a "federally related mortgage loan" as defined by 12 U.S.C. § 2602(1).

91.     Defendant is, and was at all times relevant, a loan "servicer" as defined by 12 C.F.R. § 1024.2.

92.     Plaintiff and Defendant are "persons" as defined by 12 U.S.C. § 2602(5).

93.     A failure to follow regulations promulgated by the CFPB in Regulation X is a *per se* violation of RESPA. 12 U.S.C. § 2605(k).

94.     Plaintiff's requests for audio recordings were both QWRs pursuant to 12 U.S.C. § 2605(e)(1)(A) and RFIs pursuant 12 C.F.R. § 1024.36.

95.     Audio recordings and transcripts of phone calls with borrowers are information "available in the regular course of business" to Defendant. *See* 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

96.     Defendant failed to provide Plaintiff with requested information available to it in the ordinary course of business. Consequently, Defendant violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k), and 12 C.F.R. § 1024.36.

97.     Defendant further violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k), and 12 C.F.R. § 1024.36 by failing to adequately investigate and timely respond to Plaintiff's requests.

98.     As a result of Defendant's failure to comply with RESPA and Regulation X, Plaintiff was required to incur various expenses to respond to Defendant's deficient response and in a reasonable effort to obtain compliance from Defendant.

99.     Plaintiff is informed and believes that other similarly situated borrowers have requested audio recordings or transcripts of telephone calls between themselves and Defendant only to be likewise denied access to that information by Defendant. Additionally, Defendant has refused to provide the requested information to Plaintiff despite Plaintiff's several requests and has offered only boilerplate and unjustified objections to producing requested audio recordings. This is sufficient to plausibly show a "pattern or practice" under RESPA. As such, Defendant is liable for statutory damages in an amount of up to $2,000 per violation pursuant to 12 U.S.C. § 2605(f), which is in addition to actual damages under 12 U.S.C. § 2605(f).

## SECOND CAUSE OF ACTION

### Violation of California's Unfair Competition Law

### Cal. Bus & Prof. Code §§ 17200, *et seq.*

### (As to the Subclass)

100.     Plaintiff re-alleges and incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

101.     Plaintiff and Defendant are each a "person" as defined by California Bus. & Prof. Code § 17201. California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

102.     "Unfair competition" is defined by Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice; (2) an "unfair" business act or practice; (3) a "fraudulent" business act or practice; and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

103.    Restitution and injunctive relief are available remedies under the UCL to protect consumers from unfair or unlawful business practices.

104.    By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct which constitutes unlawful and unfair business practices, as prohibited by California's UCL.

### A. *"Unlawful" Prong*

105.    Beginning at a date currently unknown through the time of this Complaint, Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code § 17200 *et seq.*

106.    Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant has engaged in unfair competition by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code §§ 17200 *et seq.* Specifically, Defendant violated RESPA when it disregarded Plaintiff's and, upon information and belief, other borrowers' reasonable requests for account information and documents, including willful failure to produce requested audio recordings and/or transcripts.

107.    Defendant was capable of producing the audio recordings and/or transcripts to Plaintiff but deliberately chose not to do so, despite two requests by Plaintiff, which impedes Plaintiff's ability to resolve issues with Plaintiff's mortgage.

108.    Plaintiff and the Subclass members reserve the right to allege other violations of law, which constitute other unlawful business practices or acts, as such conduct is ongoing and continues to this date.

109.    Plaintiff and the Subclass incurred actual damages as a result of Defendant's non-compliance with RESPA, including, for example, out-of-pocket expenses such as mailing a follow-up letter to Defendant in an effort to obtain compliance with RESPA.

110. By failing to provide information requested through not one but two QWRs from Plaintiff, as required under RESPA, and offering only boilerplate and insufficient objections based on a business policy of Defendant, Defendant engaged in a pattern of "unlawful" business practices within the meaning of California's Unfair Competition Law.

111. As a result, Plaintiff seeks injunctive relief requiring Defendant's compliance with the QWRs of Plaintiff and the Subclass, as well as public injunctive relief to benefit California's general public directly by bringing an end to Defendant's unlawful business practices which threaten future injury to the general public within California.

112. Additionally, Plaintiff seeks restitution for out-of-pocket losses.

### B. *"Unfair" Prong*

113. Beginning at a date currently unknown and continuing up through the time of this Complaint, Defendant has committed acts of unfair competition that are prohibited by Bus. & Prof. Code §§ 17200, *et seq.*

114. Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the statutes by engaging conduct and practices that threaten an incipient violation of law/s or violate the policy or spirit of RESPA by intentionally withholding requested audio recordings and/or transcripts of telephone conversions regarding customer mortgage accounts despite a proper request for such records.

115. Additionally, Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of RESPA by engaging in practices that are immoral, unethical, oppressive or unscrupulous, the utility of such conduct, if any, being far outweighed by the harm done to consumers and against public policy by withholding requested audio recordings and/or transcripts related to the mortgage accounts.

116. Defendant was capable of producing the audio recordings and/or transcripts to Plaintiff but deliberately chose not to do so, despite two requests by Plaintiff, which impedes Plaintiffs' ability to resolve issues with Plaintiff's mortgage.

117. Plaintiff and the Subclass members reserve the right to allege other violations of law, which constitute other unfair business practices or acts, as such conduct is ongoing and continues to this date.

118. Plaintiff and the Subclass incurred actual damages as a result of Defendant's non-compliance with RESPA, including, for example, out-of-pocket expenses such as mailing a follow-up letter to Defendant in an effort to obtain compliance with RESPA.

119. As a result, Plaintiff seeks injunctive relief requiring Defendant's compliance with the QWRs of Plaintiff and the Subclass, as well as public injunctive relief to benefit California's general public directly by bringing an end to Defendant's unfair business practices which threaten future injury to the general public within California.

120. Additionally, Plaintiff seeks restitution for out-of-pocket losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff the following relief against Defendant:

- That the Court certify this case as a class action;
- That the Court appoint Plaintiff to serve as the class representative in this matter and appoint Plaintiff's counsel as class counsel;
- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the statutes and laws asserted herein; and
- That Plaintiff and the Subclass be awarded injunctive relief prohibiting such conduct in the future.

\\

## First Cause of Action for
## Violations of Real Estate Settlement Procedures Act
## 12 U.S.C. §§ 2601, *et seq.*

- Actual damages according to proof per violation to Plaintiff and to each member of the Class and Subclass pursuant to 12 U.S.C. § 2605(f);
- Statutory damages in an amount of $2,000 per violation to Plaintiff and to each member of the Class and Subclass pursuant to 12 U.S.C. § 2605(f);
- Attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f)(3); and
- Any and all further relief that this Court deems just and proper.

## Second Cause of Action for
## Violations of California's Unfair Competition Law
## Cal. Bus. & Prof. Code §§ 17200, *et seq.*

- Injunctive relief ordering Defendant to release audio recordings and transcripts of telephone calls to Plaintiff and the Subclass members;
- Injunctive relief, including public injunctive relief, prohibiting improper conduct alleged above in the future, under Bus. § Prof. Code § 17203;
- Costs of suit;
- Attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and/or the common fund doctrine; and
- Any and all further relief that this Court deems just and proper.

## <u>TRIAL BY JURY</u>

121. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury on all causes of action and claims to which Plaintiff has a right to a jury trial.

\\

Dated: August 4, 2023                     **KAZEROUNI LAW GROUP, APC**

                                      By    */s/ Abbas Kazerounian*
                                          _____
                                             Abbas Kazerounian, Esq.
                                             *Attorneys for Plaintiff*

**Additional Counsel for Plaintiff**
**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, UT 84790
Telephone:  (800) 400-6808
Facsimile: (800) 520-5523