TROUTMAN PEPPER HAMILTON SANDERS LLP
Elizabeth Holt Andrews (SBN 263206)
elizabeth.andrews@troutman.com
333 Twin Dolphin Drive, Suite 400
Redwood City, California 94065-1434
Telephone: 650.802.3600
Facsimile: 650.802.3650

Jason E. Manning (admitted *pro hac vice*)
jason.manning@troutman.com
Kathleen M. Knudsen (admitted *pro hac vice*)
kathleen.knudsen@troutman.com
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: 757.687.7500
Facsimile: 757.687.7510

*Attorneys for Defendant*
Flagstar Bank, N.A.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| AMANDA M. ALCANTAR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FLAGSTAR BANK, N.A.,<br><br>Defendant. | Case No. 2:23-CV-01609-KJM-CKD<br><br>**DEFENDANT FLAGSTAR BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: December 8, 2023<br>Time: 10:00 A.M.<br>Courtroom: 3, 15th Floor<br>Judge: The Honorable Kimberly J. Mueller |

**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on December 8, 2023, at 10:00 AM, or as soon thereafter as counsel may be heard by the above-entitled Court, located in the Robert T. Matsui Federal Courthouse, 501 I Street, Sacramento, California, before the Honorable Kimberly J. Mueller, Courtroom 3, 15th Floor, Defendant Flagstar Bank, N.A. ("Flagstar") will, and hereby does move for judgment on the pleadings with respect to Plaintiff Amanda M. Alcantar's Complaint, pursuant to Federal Rule of Civil Procedure 12(c).

This Motion is made on the grounds that Plaintiff's allegations in the Complaint fail to state a claim for relief against Flagstar, and any amendment would be futile. Therefore, Flagstar requests that the Court dismiss the Complaint in its entirety with prejudice with respect to Plaintiff, and without prejudice with respect to the putative class.

A declaration detailing the parties' meet and confer efforts pursuant to Paragraph 4.A.(a) of the Civil Standing Order is included herewith. Pursuant to Paragraph 4.A(d) of this Court's Civil Standing Order, no settlement discussions are currently occurring in this matter.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the pleadings and papers on file herein, and upon such other documents as may be presented to the Court prior to or at the hearing.

Dated:  November 3, 2023                    Respectfully submitted,

                                            TROUTMAN PEPPER
                                            HAMILTON SANDERS LLP

                                            By: */s/ Elizabeth Holt Andrews*
                                                Elizabeth Holt Andrews
                                                Jason E. Manning (admitted *pro hac vice*)
                                                Kathleen M. Knudsen (admitted *pro hac vice*)

                                                *Attorneys for Defendant*
                                                Flagstar Bank, N.A.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .............................................1

    A.    Factual Background ..........................................................................................1

    B.    Procedural Background ....................................................................................4

III.  LEGAL STANDARD .............................................................................................4

    A.    Rule 12(c) Motion for Judgment on the Pleadings ...................................4

    B.    Real Estate Settlement Procedures Act .......................................................6

IV.   ARGUMENT .............................................................................................................8

    A.    Plaintiff does not plausibly allege a substantive RESPA violation for failure
        to respond to a qualified written request. ..................................................8

        1.    Plaintiff does not plausibly allege that her information request
             constituted a QWR. .......................................................................................9

             (1)   Plaintiff's demand letters do not constitute QWRs because
                      they were not about loan servicing—i.e., payments on
                      Plaintiff's loan. .............................................................................9

             (2)   Plaintiff's demand letters do not constitute QWRs because
                      they were repetitive, discovery-style documents. ........................9

        2.    Under RESPA, Flagstar was not obligated to respond to Plaintiff's
             demand letters. .............................................................................................11

             (1)   Flagstar was not obligated to provide Plaintiff's call records
                      because the information was subject to an exception to
                      production under Regulation X. ................................................11

             (2)   Plaintiff mistakenly focuses on the availability of call
                      records to Flagstar, which is not the proper analysis. ..............12

             (3)   Even if the availability of call records was relevant, Plaintiff
                      has not sufficiently alleged facts showing that such records
                      were available to Flagstar in the ordinary course of business
                      through reasonable efforts. .........................................................13

              (4)   To the extent Plaintiff demanded audio recordings, these are
                      not subject to RESPA because production of audio files
                      would not be a "written" response. ..........................................13

         3.    Plaintiff does not plausibly allege that Flagstar failed to reasonably
             respond to her demand letters ...................................................................14

B.    Even if Plaintiff *had* plausibly alleged a RESPA violation (she has not), Plaintiff fails to plausibly allege facts showing actual damages, which is necessary to recover for a RESPA violation and to show sufficient injury-in-fact for standing. ........................................................................ 15

C.    Even if Plaintiff *could* allege a technical violation of RESPA, Plaintiff has not alleged facts sufficient to show a "pattern and practice" of wrongdoing, which is necessary for recovery of "additional" damages beyond Plaintiff's actual injury. .......................................................................................... 17

D.    Because Plaintiff's RESPA claim is fatally deficient, her UCL claim likewise fails. ................................................................................................ 19

V.    CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) .................................................................................................. 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 5

*Bullock v. Ocwen Loan Servicing, LLC*,
    No. PJM 1 4-3836, 2016 WL 1588494 (D. Md. Apr. 18, 2016)............................. 11

*Carswell v. JP Morgan Chase Bank N.A.*,
    500 F. App'x 580 (9th Cir. 2012).......................................................................... 15

*Conant v. Wells Fargo Bank, N.A.*,
    60 F. Supp. 3d 99 (D.D.C. 2014) .......................................................................... 17

*Derusseau v. Bank of Am., N.A.*,
    No. 11 CV 1766 MMA JMA, 2011 WL 5975821 (S.D. Cal. Nov. 29, 2011) .......... 9

*Doe 1 v. AOL LLC*,
    719 F. Supp. 2d 1102 (N.D. Cal. 2010) .................................................................. 4

*Doe v. Does 1–10*,
    No. CV 14-1123 RZ, 2014 WL 12617343 (C.D. Cal. Mar. 3, 2014) .................... 18

*Edge-Wilson v. Wells Fargo Bank, N.A.*,
    No. 18-CV-03302-PJH, 2018 WL 6438359 (N.D. Cal. Dec. 7, 2018) .................... 5

*Ekundayo v. PNC Bank, Nat'l Ass'n*,
    No. A-14-CA-142-SS, 2014 WL 5092625 (W.D. Tex. Oct. 9, 2014) ............... 9, 10

*Fitch v. Fed. Hous. Fin. Agency*,
    No. 18-CV-214JJM, 2021 WL 4901909 (D.R.I. Oct. 21, 2021), *R&R adopted*,
    No. CV 18-214-JJM-PAS, 2022 WL 159287 (D.R.I. Jan. 18, 2022) ............... 11, 16

*Freeman v. Quicken Loans, Inc.*,
    566 U.S. 624 (2012) .................................................................................................. 5

*Giordano v. MGC Mortg., Inc.*,
    160 F. Supp. 3d 778 (D.N.J. 2016) ........................................................................ 18

*Gorbaty v. Wells Fargo Bank, N.A.*,
    No. 10-CV-3291, 2012 WL 1372260 (E.D.N.Y. April 18, 2012) .......................... 19

*Hawkins-El v. First Am. Funding, LLC*,
    891 F. Supp. 2d 402 (E.D.N.Y. 2012)............................................................... 9, 16

-iii-

*Hogan v. Freedom Mortg. Corp.*,
  No. 521CV00782JWHSPX, 2022 WL 1439357 (C.D. Cal. Apr. 7, 2022)............................ 16

*In re Jackson*,
  622 B.R 321 (Bankr. D.N.J. 2020). ....................................................................................... 17

*Kelly v. Fairon & Assocs.*,
  842 F. Supp. 2d 1157 (D. Minn. 2012) .................................................................................... 9

*Lamie v. U.S. Tr.*,
  540 U.S. 526 (2004) ................................................................................................................ 13

*Lebeau v. U.S. Bank, N.A. as Tr. for Citigroup Mortg. Loan Tr. Inc.*,
  No. CV 17-329-JJM-PAS, 2019 WL 1077285 (D.R.I. Mar. 7, 2019) ...........................*passim*

*Mendoza v. Wells Fargo Bank, N.A.*,
  No. 521CV00098JWHKKX, 2021 WL 4932732 (C.D. Cal. Aug. 9, 2021)........................... 16

*Moore v. Wells Fargo Bank, N.A.*,
  908 F.3d 1050 (7th Cir. 2018).................................................................................................. 16

*Munoz v. CitiMortgage, Inc.*,
  No. 8:20-CV-2311-VMC-AEP, 2021 WL 4133748 (M.D. Fla. Sept. 10, 2021)................... 11

*Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*,
  615 F. Supp. 3d 379 (M.D.N.C. 2022) ............................................................................. 5, 13

*O'Connor v. Nantucket Bank*,
  992 F. Supp. 2d 24 (D. Mass. 2014) ................................................................................ 5, 14

*PHL Variable Ins. Co. v. Bank of Utah*,
  No. CIV. 12-1256, 2012 WL 4815638 (D. Minn. Oct. 10, 2012)........................................... 18

*Robinson v. Bank of Am., N.A.*,
  No. 21-CV-00110-AJB-DEB, 2022 WL 837073 (S.D. Cal. Mar. 21, 2022)........................... 6

*Ruegsegger v. Caliber Home Loans, Inc.*,
  No. SA CV 17-0907-DOC, 2018 WL 5993857 (C.D. Cal. Apr. 30, 2018) ........................... 10

*Salter v. Ocwen Loan Servicing, LLC*,
  No. 19-60304-CIV, 2019 WL 8137877 (S.D. Fla. June 19, 2019) ........................................... 9

*Sharma v. Rushmore Loan Mgmt. Servs.*,
  611 F. Supp. 3d 63 (D. Md. 2020) .......................................................................................... 8

*Sutton v. CitiMortgage, Inc.*,
  228 F. Supp. 3d 254 .............................................................................................................. 18

*Wilde v. Select Portfolio Servicing, Inc.*,
  No. 20-CV-06863-SVK, 2021 WL 6062869 (N.D. Cal. Feb. 26, 2021) ............................... 17

*Zhang v. Countrywide Home Loans, Inc.*,
   601 F. App'x 567 (9th Cir. 2015)........................................................................... 15

**Statutes**

12 U.S.C. §§ 2601, *et seq.* (Real Estate Settlement Procedures Act or RESPA) ...............*passim*

12 U.S.C. § 2601 ................................................................................................. 6

12 U.S.C. § 2605 ...................................................................................... 6, 8, 13, 17

12 U.S.C. § 2617 ................................................................................................. 6

Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Unfair Competition Law or UCL)................ 1, 4, 8, 19

**Other Authorities**

12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii)............................................................... 13

12 C.F.R. § 1024.35 ............................................................................................ 6

12 C.F.R. § 1024.36 ........................................................................................... 11

12 C.F.R. § 1024.36(a) ......................................................................................... 6

12 C.F.R. § 1024.36(d)(1) ................................................................................... 14

12 C.F.R. § 1024.36(d)(1)(i)-(ii) ............................................................................ 6

12 C.F.R. § 1024.36(f)(1)(i) ................................................................................. 18

12 C.F.R. § 1024.36(f)(1)(i)-(iv) ....................................................................... 6, 10

12 C.F.R. § 1024.36(f)(1)(iv) ............................................................................... 11

Federal Rule of Civil Procedure 8 ......................................................................... 4

Federal Rule of Civil Procedure 12 ................................................................. 2, 4, 5

*Mortg. Servicing Rules Under the Real Estate Settlement Procedures
   Act*, 78 Fed. Reg. 10696-01, 2013 WL 525347 (Feb. 14, 2013)....................... 10, 17

Defendant Flagstar Bank, N.A.'s Motion for Judgment on the Pleadings; MPA
Case No. 2:23-cv-01609-KJM-CKD

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Flagstar Bank, N.A. ("Defendant" or "Flagstar") submits this Memorandum in Support of Flagstar's Motion for Judgment on the Pleadings.  For the reasons below, the Court should grant Flagstar judgment on the Complaint brought by Amanda M. Alcantar ("Plaintiff") for failure to state a claim upon which relief may be granted.

## I.     INTRODUCTION

In this case, Plaintiff claims that Flagstar failed to respond to a request for information as it was obligated under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*  Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Plaintiff does not plausibly allege the elements of a RESPA claim because: (1) she does not allege facts showing that her information request constituted a qualified written request ("QWR") under RESPA; (2) due to the nature of Plaintiff's demands, Flagstar was not obligated to respond to her requests; and (3) Flagstar's response with information and numerous documents was reasonable, which satisfied any obligations under RESPA.  Moreover, even *if* Plaintiff had alleged a technical RESPA violation (she has not), Plaintiff failed to plausibly allege that she suffered any actual damages caused by the wrongful actions.  This bars Plaintiff's claims.  Finally, Plaintiff has not alleged any facts showing that Flagstar's actions constituted a pattern or practice of wrongdoing, as necessary for any "additional" damages.   Plaintiff's derivative claim under California Unfair competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") fails for the same reasons.

Thus, for the reasons more thoroughly explained below, Plaintiff's Complaint fails to state a claim upon which relief may be granted and, therefore, should be dismissed.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual background

On or about September 20, 2019, Plaintiff and her husband, Marcelino Alcantar, took out a mortgage loan with Flagstar for over half a million dollars, with an interest rate of 3.750%.  *See*

---

[1] The alleged facts are taken from Plaintiff's Complaint.  Flagstar does not concede that Plaintiff's allegations are accurate or supported by any evidence but assumes their truth solely for the purposes of this motion, other than those facts established by documents attached to the pleadings.

Note ¶¶ 1-2, Ans., <u>Ex. C</u>, ECF No. 18-3, at 47 (hereinafter, the "Note").   Under the terms of the Note, Plaintiff was obligated to make monthly payments.  *Id.* ¶ 3.  Plaintiff made several payments, but then stopped.  *See* Customer Account Activity Statement, Ans., <u>Ex. C</u>, ECF No. 18-3, at 70-71 (hereinafter, "Account History").   Between 2020 and September 2022, Plaintiff obtained a forbearance on her mortgage loan, allowing her to live in her home for months without making a mortgage payment, and then obtained a partial claims mortgage.  Compl. ¶¶ 28-40.  The partial claims mortgage loan, provided by the Secretary of Housing and Urban Development ("HUD"), allowed Plaintiff to bring her loan current after she was due and owing in the amount of $86,473.48 following her lengthy forbearance.  *See* Partial Claims Note & Mortgage, **Ex. A**.[2]  During the relevant period, Flagstar serviced Plaintiff's mortgage loan.  Compl. ¶ 27.

Following Plaintiff's months of non-payment and Flagstar's corresponding efforts to mitigate the harm to Plaintiff from her own inability to make her monthly payments, Plaintiff's counsel sent a letter to Flagstar seeking prelitigation discovery.  *See* Compl. ¶¶ 41-44.  In this letter, Plaintiff's counsel made a laundry list of requests for information.  *See* Pl's 1st Demand, Ans., Ex. A, ECF No. 18-1.   This included extensive requests regarding Plaintiff's payments, principal, interest, fees, and so forth.  *Id.*  It included broad requests for "all account notes, screens, information or documents" in the borrower's file.  *Id.*  Plaintiff's counsel further demanded:

> *11. A copy of any and all recordings of my clients or any other person concerning my clients' account.*
>
> *12. A copy of any and all transcripts of conversations with my clients or any other person concerning my clients' accounts.*

*Id.*  To justify this exhaustive demand, Plaintiff's counsel claimed that he was "disputing the validity of … the principal balance, calculated monthly payment, assessed costs, calculated escrow payment, and any fees claimed to be owed."  *Id.*  But there was zero justification – or even details – given for any of these disputed amounts.  *See id.*

---

[2] Flagstar requests the Court to take judicial notice of the document appended hereto as Exhibit A, a recorded property deed that is part of the public record and therefore easily verifiable. *See Manwarren v. MEB Loan Trust IV*, No. 2:22-cv-1819-KJN, 2023 WL 3751075, at *1 n.2 (E.D. Cal. June 1, 2023).

Flagstar received this letter on October 5, 2022, Compl. ¶ 45, and sent an acknowledgement via letter dated the next day. *See* Oct. 6 Letter, Ans., Ex. B, ECF No. 18-2.  On October 18, 2022, Flagstar sent Plaintiff a 72-page response, which included the following documents:

- Plaintiff's Uniform Residential Loan Application
- Loan Estimate
- Closing Disclosures
- Final Title Policy
- Note
- 1st Payment Letter
- Escrow Analysis
- Corporation Assignment of Deed of Trust
- Customer Account Activity Statement
- Compliance Agreement
- Transaction Code List

*See* Response Letter, Ans., Ex. C, ECF No. 18-3.  Plaintiff acknowledges that Flagstar provided information about the monthly payment amounts, interest rate information, and so forth, as requested.  Compl. ¶ 48.  Having provided numerous documents, Flagstar informed Plaintiff's counsel that it would not provide a complete copy of any and all recordings and transcripts "because it is considered overbroad or unduly burdensome to provide." *See* Response Letter.

Plaintiff's counsel wrote back demanding that as part of the "complete file" Flagstar was obligated to provide "all recordings and transcripts" related to Plaintiff.  Compl. ¶ 52.  In this letter, Plaintiff's counsel claimed that RESPA required Flagstar "to produce all information available through reasonable business efforts."  *See* Follow-up Letter, Ans., Ex. D, ECF No. 18-4.  This response did ***not address*** the RESPA exceptions to production of otherwise available information that Flagstar had identified—*i.e.*, that the requests were overbroad or unduly burdensome.  *Id.*

On November 23, 2022, Flagstar acknowledged the letter, Nov. 23 Letter, Ans., Ex. E, ECF No. 18-5, and responded on November 29, 2022, providing *additional* reasons why it was not obligated to provide call recordings or transcripts, *see* Nov. 29 Letter, Ans., Ex. F, ECF No. 18-6.

As identified in this letter, in addition to the prior reasons that the requests were unduly burdensome and overbroad, Flagstar further informed Plaintiff's counsel that the demand for call recordings and transcripts was confidential, proprietary, and/or privileged, and the call recordings were only kept as part of employee personnel files, *not* as part of a consumer's loan servicing file. *Id.*

**B.    Procedural Background**

In response, Plaintiff filed this lawsuit. Plaintiff alleges a two-count Complaint, claiming: 1) that Flagstar violated RESPA, and 2) that Flagstar violated the California UCL.  Both claims are based on Flagstar's failure to provide Plaintiff call recordings and transcripts.  Plaintiff theorizes that Flagstar violated RESPA by failing to respond as required to a QWR and Request for Information ("RFI").  Plaintiff's UCL claim is derivative of the alleged RESPA violation.

Plaintiff purports to bring her claims on behalf of a nationwide and California subclass. Plaintiff defines the purported Class as:

> All persons within the United States who have or have had a mortgage loan serviced by Defendant and who, within three (3) years of filing this Complaint, have requested copies of audio recordings or transcripts of phone calls between themselves and Defendant pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R. § 1024.36 and who have subsequently been denied access to those audio recordings or transcripts by Defendant.

Plaintiff defines the California Subclass as:

> All persons within California who have or have had a mortgage loan serviced by Defendant and who, within four (4) years of filing this Complaint, have requested copies of audio recordings or transcripts of phone calls between themselves and Defendant pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R. § 1024.36 and who have subsequently been denied access to those audio recordings or transcripts by Defendant.

*See* Compl. ¶¶ 76-77.  Plaintiff seeks class certification, injunctive relief ordering Flagstar to release audio recordings and transcripts to the Subclass, actual damages and statutory damages of $2,000 per violation to the Plaintiff and each member of the Class, and attorneys' fees and costs.

## III.    LEGAL STANDARD

**A.    Rule 12(c) Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under

- 4 -

1   Rule 12(c), the Court reviews the sufficiency of the complaint to ensure the plaintiff has alleged a

2   plausible claim showing that the pleader is entitled to relief as required by Rule 8.  *Doe 1 v. AOL*

3   *LLC*, 719 F. Supp. 2d 1102, 1108 (N.D. Cal. 2010) ("'[T]he same standard of review applicable to

4   a Rule 12(b) motion applies to its Rule 12(c) analog,' as the motions are 'functionally identical.'").

5   "Thus, a Rule 12(c) motion may be based on either: (1) the lack of a cognizable legal theory; or (2)

6   insufficient facts to support a cognizable legal claim." *Id.*

7       Although factual allegations must be accepted as true, "[t]hreadbare recitals of the elements

8   of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

9   556 U.S. 662, 678 (2009).  In short, the complaint must plead "a claim to relief that is plausible on

10  its face," but the Court need not accept legal conclusions or arguments drawn from the facts.  *Iqbal*,

11  556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  "Rule 8

12  does not empower respondent to plead the bare elements of his cause of action, affix the label

13  'general allegation,' and expect his complaint to survive a motion to dismiss."  *Id.* at 687.  A

14  "pleading that offers 'legal conclusions' of 'a formulaic recitation of the elements of a cause of

15  action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  Thus, "[w]hile legal conclusions

16  can provide the framework of a complaint, they ***must be supported by factual allegations***."  *Id.* at

17  679 (emphasis added); *accord Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*,

18  615 F. Supp. 3d 379, 384 (M.D.N.C. 2022) ("Generally, conclusory allegations based <u>solely</u> 'upon

19  information and belief' are 'insufficient to defeat a motion to dismiss.'") (citation omitted).

20      Finally, while "[r]eview is generally limited to the contents of the complaint, … the court

21  can also consider a document on which the complaint relies if the document is central to the claims

22  asserted in the complaint, and no party questions the authenticity of the document." *Edge-Wilson v.*

23  *Wells Fargo Bank, N.A.*, No. 18-CV-03302-PJH, 2018 WL 6438359, at *2 (N.D. Cal. Dec. 7, 2018)

24  (relying on exhibits to grant motion to dismiss RESPA claim).  Practically, in evaluating the

25  sufficiency of a RESPA claim, courts may consider the correspondence between the parties.

26  *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 28 (D. Mass. 2014) (holding that it was

27  appropriate to consider letters attached to the defendant's motion to dismiss).

28

**B.      Real Estate Settlement Procedures Act**

"Enacted in 1974, RESPA regulates the market for real estate 'settlement services,' a term defined by statute to include 'any service provided in connection with a real estate settlement'…." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 626–27 (2012). It was enacted to provide consumers "with greater and more timely information on the nature and costs of the [real estate] settlement process" and protect consumers "from unnecessarily high settlement charges." 12 U.S.C. § 2601(a). Congress authorized the Consumer Financial Protection Bureau ("CFPB") to promulgate rules implementing RESPA through Regulation X. *See* 12 U.S.C. § 2617(a).

Congress included a limited provision in RESPA to allow consumers to submit a "qualified written request ["QWR"] . . . for information relating to the servicing of [their] loan." 12 U.S.C. § 2605(e)(1)(A). The statute defines "servicing" as the making or receiving of a borrower's payments on a loan. *See* 12 U.S.C. § 2605(i)(3). QWRs under RESPA and its implementing regulation, Regulation X, can take two forms. If the QWR provides a "statement of the reasons" that the borrower believes "the account is in error," it is considered a "Notice of Error" ("NOE"). *See* 12 U.S.C. § 2605(e)(1)(B)(ii); *see also* 12 C.F.R. § 1024.35. Alternatively, if the QWR requests specific information relating to the servicing of the loan, the correspondence is a "Request for Information" (or "RFI"). *See* 12 U.S.C. § 2605(e)(1)(B)(ii); *see also* 12 C.F.R. § 1024.36(a) ("A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section….").

A loan servicer must respond to an RFI by investigating the request and then:

provid[ing] the borrower with a **written** explanation or clarification that **includes**—

(i) **information requested by the borrower** or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(C) (emphasis added); *accord* 12 C.F.R. § 1024.36(d)(1)(i)-(ii). "RESPA requires the servicer of a federally related mortgage loan to provide a timely *written response* to

inquiries from borrowers regarding the servicing of their loans." *Robinson v. Bank of Am., N.A.*, No. 21-CV-00110-AJB-DEB, 2022 WL 837073, at *8 (S.D. Cal. Mar. 21, 2022) (emphasis added).

However, this requirement is limited. A loan servicer is <u>not</u> required to respond to a RFI if the borrower seeks (1) Duplicative information, (2) Confidential, proprietary or privileged information, (3) Irrelevant information, or (4) Overbroad or unduly burdensome information. 12 C.F.R. § 1024.36(f)(1)(i)-(iv).

Practically, this means that a loan servicer makes a four-step inquiry in determining whether it is required to provide information requested by a borrower:

1. **Is the requested information about loan servicing?** If not, the request is not a QWR and there is no obligation to respond.

2. *If* the requested information is about loan servicing, the loan servicer must then ask: **Is the information available?** If not, there is no obligation to provide the information to the borrower.

3. *If* the requested information is about loan servicing *and* is available, the loan servicer must ask: **Is there an exception to production?** Exceptions include that the requested information is duplicative, confidential, privileged, irrelevant, overbroad, or unduly burdensome. If an exception applies, the loan servicer is not required to produce the information.

4. *If* the requested information is about loan service, is available, and not subject to an exception, the final question the loan servicer must determine is: **Can this information be provided via a *written* response?** If not, then the request is outside the scope of a QWR response.

If the requested information is about loan servicing, is available, there are no applicable exceptions, *and* it can be provided in a written response, then – and **only** then – RESPA requires the loan servicer to produce the requested information.

Visually this looks like this:



Congress provided consumers a limited private right of action for RESPA violations.[3] *See* 12 U.S.C. § 2605(f).  If a loan servicer violates RESPA, a consumer may recover 1) actual damages that the consumer suffered from the failure, and 2) any "additional damages … in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." § 2605(f)(1).

## IV.    <u>ARGUMENT</u>

Plaintiff claims that Flagstar failed to properly respond to a QWR for information under RESPA, which violated both RESPA and the UCL.   Plaintiff's claims fail for multiple independent reasons, each of which is dispositive.

**A.    Plaintiff does not plausibly allege a substantive RESPA violation for failure to respond to a qualified written request.**

To state a claim, Plaintiff must allege facts that, if true, show that Plaintiff sent a QWR, that Flagstar was obligated to respond to the QWR, and that Flagstar failed to reasonably respond.  *See supra* Part III.B.  Plaintiff's Complaint fails each of these requirements.

---

[3] Consumers can only recover on a cause of action for violation of Regulation X to the extent it is consistent with RESPA itself.  While Regulation X can clarify RESPA provisions, it cannot expand the limited private right of action created by the statute.  *See Alexander v. Sandoval*, 532 U.S. 275 (2001) (holding that a private right of action to enforce a statute does not include a right to enforce related regulations); *Sharma v. Rushmore Loan Mgmt. Servs.*, 611 F. Supp. 3d 63, 81 (D. Md. 2020) ("[T]he language in a regulation cannot be read to broaden the scope of the statutory definition of 'servicing' or to expand the types of requests for information constituting a QWR beyond those established by the statute.") (citation omitted).

1.    <u>Plaintiff does not plausibly allege that her information request constituted a QWR.</u>

(1)    *Plaintiff's demand letters do not constitute QWRs because they were not about loan servicing—i.e., payments on Plaintiff's loan.*

As a threshold matter, Plaintiff must show that her demands for recordings and transcripts qualify as QWRs under RESPA.  To qualify, Plaintiff must show how her demands were limited to the topic of loan servicing—*i.e.*, payments on Plaintiff's loan.  Plaintiff does not make this showing, nor can she.  Plaintiff's demands were not limited to topics pertaining to payments on her loan.  Hence, they cannot qualify as QWRs under RESPA.  *See Sharma v. Rushmore Loan Mgmt. Servs.*, 611 F. Supp. 3d 63, 81 (D. Md. 2020) ("Here, none of Brown's correspondence concerned Rushmore's receipt of scheduled periodic payments on Brown's loan or the making of such payments, which are the subjects that a communication must concern to qualify as a QWR under the applicable statutes."); *Salter v. Ocwen Loan Servicing, LLC*, No. 19-60304-CIV, 2019 WL 8137877, at *2 (S.D. Fla. June 19, 2019) (holding that under Regulation X, a servicer is only obligated to provide information, upon request, related to the "servicing of a mortgage loan").  RESPA does not require a response to inquiries outside the scope of "servicing" (*i.e.*, loan payments).  *See Kelly v. Fairon & Assocs.*, 842 F. Supp. 2d 1157, 1160 (D. Minn. 2012).

Flagstar specifically explained this to Plaintiff.  In its letter dated November 29, 2022, Flagstar explained that the call recordings and transcripts requested, to the extent they even existed, were ***not*** kept as a component of the loan servicing file but only in *employee personnel files*.  *See* Nov. 29 Letter, Ans., Ex. D, ECF No. 18-6.  As such, this request was not about loan servicing, and could not properly be considered a QWR.

Since Plaintiff's demands for recordings and transcripts is not properly considered a QWR, Plaintiff's Complaint fails to state a claim and should be dismissed.

(2)    *Plaintiff's demand letters do not constitute QWRs because they were repetitive, discovery-style documents.*

Next, "[r]ambling, repetitive" letters posing "discovery-style document demands and interrogatories" do not constitute QWRs within the meaning of RESPA.  *See Ekundayo v. PNC Bank, Nat'l Ass'n*, No. A-14-CA-142-SS, 2014 WL 5092625, at *5 (W.D. Tex. Oct. 9, 2014).

- 9 -

Similarly, letters that "raise[] essentially the same dispute" as prior letters do not require a response. *See Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 408 (E.D.N.Y. 2012).

Here, Plaintiff's demand letters do not constitute QWRs because they are repetitive, discovery-style requests. *See* Pl's 1st Demand, Ans., Ex. A, ECF No. 18-1; Follow-up Letter, Ans., Ex. D, ECF No. 18-4. In fact, Plaintiff's letters are filled with demands for information that courts have routinely found to be *outside* the scope of QWRs. For example, Request 10 asked for "a copy of my client's complete file…." This is not a proper QWR. *See Derusseau v. Bank of Am., N.A.*, No. 11 CV 1766 MMA JMA, 2011 WL 5975821, at *4 (S.D. Cal. Nov. 29, 2011) (finding demand for "[a] complete life of loan transactional history" was not a proper QWR topic). Further, re-requesting the *same* information multiple times, as Plaintiff did, does not constitute separate QWRs. *Compare* Pl's 1st Demand, Ans., Ex. A, ECF No. 18-1 (requesting call recordings and transcripts); *with* Follow-up Letter, Ans., Ex. D, ECF No. 18-4 (same request); *accord Ruegsegger v. Caliber Home Loans, Inc.*, No. SA CV 17-0907-DOC (KESx), 2018 WL 5993857, at *25 (C.D. Cal. Apr. 30, 2018) (holding that repeated requests for the same information, or multiple follow-ups, do not constitute separate QWRs).

In short, Plaintiff sent Flagstar an extensive list of "discovery-style document demands and interrogatories" improperly couched as a QWR seeking information under RESPA. *See Ekundayo*, 2014 WL 5092625, at *5. But the purpose of RESPA is *not* to provide borrowers pre-litigation discovery—or worse, provide a pretext for litigation. *Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act* (Regulation X), 78 Fed. Reg. 10696-01, 2013 WL 525347 (Feb. 14, 2013) ("[T]he Bureau does not believe that the information request procedures should replace or supplant civil litigation document requests and should not be used as a forum for pre-litigation discovery."). Plaintiff's attempt to serve pre-litigation discovery is improper. The Court should dismiss Plaintiff's Complaint because Plaintiff does not base her claim on a valid QWR.

2.    <u>Under RESPA, Flagstar was not obligated to respond to Plaintiff's demand letters.</u>

(1)    *Flagstar was not obligated to provide Plaintiff's call records because the information was subject to an exception to production under Regulation X.*

Even if Plaintiff *had* sent Flagstar a valid QWR (which she did not), Flagstar would not have been obligated to provide call records information because a RESPA exception applies.

Regulation X makes clear that a loan servicer is ***not*** required to provide: (1) duplicative information, (2) confidential, proprietary, or privileged information, (3) irrelevant information, or (4) overbroad or unduly burdensome information. 12 C.F.R. § 1024.36(f)(1)(i)-(iv); *Lebeau v. U.S. Bank, N.A. as Tr. for Citigroup Mortg. Loan Tr. Inc.*, No. CV 17-329-JJM-PAS, 2019 WL 1077285, at *4 (D.R.I. Mar. 7, 2019) (holding that RESPA "does not require the servicer to provide the requested information or conduct an investigation if it determines that the request for information is duplicative of information the servicer has already provided the borrower, … or the request is overbroad or unduly burdensome").

Here, Flagstar determined that Plaintiff's requests fell under multiple exceptions and notified Plaintiff of this determination. Flagstar specifically responded to Plaintiff's demand for all recordings and transcripts by stating that it was unable to honor Plaintiff's request because the information was "considered overbroad or unduly burdensome to provide." *See* Response Letter, Ans., Ex. C, ECF No. 18-3.

Flagstar's response satisfied RESPA by identifying that the requested information was overbroad and the information's production would create an undue burden, and thus there was on obligation to produce it. *See Bullock v. Ocwen Loan Servicing, LLC*, No. PJM 1 4-3836, 2016 WL 1588494, at *2 n.6 (D. Md. Apr. 18, 2016) ("Section 1024.36 explicitly exempts servicers from responding to 'overbroad or unduly burdensome information requests,' 12 C.F.R. § 1024.36(f)(1)(iv), which include the use of Information Requests as a "forum for pre-litigation discovery.'") (citation omitted); *see also Munoz v. CitiMortgage, Inc.*, No. 8:20-CV-2311-VMC-AEP, 2021 WL 4133748, at *7 (M.D. Fla. Sept. 10, 2021) (finding that CitiMortgage did not violate RESPA by responding to a demand for CitiMortgage notes reflecting communication with the Munozes by stated that "[t]he information requested is confidential, proprietary, or privileged").

In summary, Plaintiff has not plausibly alleged that Flagstar failed to respond to Plaintiff's demand letters or that Flagstar's exhaustive responses were unreasonable in total.   In fact, in the whole, Flagstar responded to Plaintiff with substantive answers and supporting documents.  *See* Oct. 6 Letter, Ans., Ex. B, ECF No. 18-2; Response Letter, Ans., Ex. C, ECF No. 18-3; Nov. 23 Letter, Ans., Ex. E, ECF No. 18-5; Nov. 29 Letter, Ans., Ex. D, ECF No. 18-6.   To the extent Flagstar withheld any recordings or transcripts, Flagstar properly identified that the request was overbroad, production of these records would create an undue burden on Flagstar, and further that the information was confidential, proprietary, and/or privileged because it was kept as part of employee personnel files and was "not a component of the loan servicing file."  *See* Nov. 29 Letter, Ans., Ex. D, ECF No. 18-6.  As a matter of law, Flagstar satisfied its burden to respond as RESPA would require.  Accordingly, Plaintiff's claim must fail.  *Fitch v. Fed. Hous. Fin. Agency*, No. 18-CV-214JJM, 2021 WL 4901909, at *3 (D.R.I. Oct. 21, 2021), *R&R adopted,* No. CV 18-214-JJM-PAS, 2022 WL 159287 (D.R.I. Jan. 18, 2022) ("That each of Wells Fargo's substantive response letters also appropriately declined to provide more material based on the evident overbreadth of the requests and the confidential, privileged and/or proprietary nature of unproduced material is permissible pursuant to Regulation X and does not amount to an across-the-board refusal to respond." (citing 12 C.F.R. § 1024.36(f)(1)(ii, iv).

> (2)   *Plaintiff mistakenly focuses on the <u>availability</u> of call records to Flagstar, which is not the proper analysis.*

Instead of addressing the overbroad, unduly burdensome, and confidentiality basis for withholding call records, Plaintiff focuses **solely** on the *availability* of the call records. Compl. ¶¶ 13-14 (citing 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii)).  Plaintiff contends that RESPA requires a servicer to respond to a request for information by providing the information or "conducting a 'reasonable search' for the requested information [and] providing the borrower with a written notification explaining the basis for the servicer's determination that the requested information is 'not available.'" Compl. ¶ 11 (quoting 12 U.S.C. § 2605(e)(2)(C); 12 C.F.R. § 1024.35(d)(1)(i)-(ii)). According to Plaintiff, "Flagstar has failed to fulfill its duty to provide all information ***available to it***…." *Id.* ¶ 14 (emphasis added).

Plaintiff misses the mark.  Based on Plaintiff's allegations, Flagstar did *not* claim that call records were "unavailable" – but rather that (assuming the communication was a QWR) the call records were subject to one or more exceptions to production.  *See* Compl. ¶ 50 (quoting Flagstar's response stating that was "unable" to provide a "copy of any and all recordings, [and a] copy of any and all transcripts" because that information was "overbroad or unduly burdensome to provide").  As explained above, this satisfied any obligation Flagstar conceivably had to respond to Plaintiff's pre-litigation discovery-style demands.    Further, Flagstar subsequently explained that the information requested, to the extent it even existed, was ***not*** kept as a component of the loan servicing file but only as it was unique to each employee and their personnel file.  *See* Nov. 29 Letter, Ans., Ex. D, ECF No. 18-6.

Plaintiff's allegations – including references to CFPB commentary – regarding *availability* of call records, Compl. ¶¶ 9-13, 57-58, should be recognized for what they are: a strawman logical fallacy. The Court should reject Plaintiff's effort to make the availability step the dispositive question of the RESPA QWR analysis—it simply is *not* the only question; it is one of *four* separate questions to determine whether requestioned information must be provided to a borrower.

> (3)    *Even if the availability of call records was relevant, Plaintiff has not sufficiently alleged facts showing that such records were available to Flagstar in the <u>ordinary course of business</u> through reasonable efforts.*

While Plaintiff alleges that "[a]udio recordings and transcripts of phone calls with borrowers are information 'available in the regular course of business,'" Compl. ¶ 95; 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii), this allegation is *entirely* deficient of supporting facts.  Hence, even if the availability of call records was the relevant consideration (it is not), Plaintiff still has not sufficiently alleged *any* facts to support her theory that such records were available to Flagstar in the ordinary course of business with reasonable efforts.  *Mystic Retreat*, 615 F. Supp. 3d at 384 ("Generally, conclusory allegations based <u>solely</u> 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'").  This bars Plaintiff's claim.

> (4)    *To the extent Plaintiff demanded audio recordings, these are not subject to RESPA because production of audio files would not be a "written" response.*

1     Finally, Plaintiff's request for audio files is improper because RESPA limits a loan servicer's

2     response to a QWR to a "written" response.    The plain language of the statute requires a loan

3     servicer to provide "a ___written___ _explanation or clarification that ___includes___—_information requested by

4     the borrower…." 12 U.S.C.A. § 2605(e)(2)(C) (emphasis added).  "It is well established that 'when

5     the statute's language is plain, the sole function of the courts—at least where the disposition required

6     by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Tr.*, 540 U.S. 526,

7     534 (2004) (citation omitted).  This is true even if the text is "awkward" or "ungrammatical." *Id.*

8     Here, no written explanation could "include" audio call recordings because those are not

9     "written" documents.  This makes common sense—the practical difference between mailing a set

10    of documents to a borrower and sending an audio file is tremendous in both time and cost.

11    Accordingly, under the plain language of the statute, there can be no obligation for a loan servicer,

12    such as Flagstar, to provide audio recordings because they are not part of a "written" explanation.

13        3.    Plaintiff does not plausibly allege that Flagstar failed to reasonably respond to her

14              demand letters.

15    Despite that Plaintiff's two letters should not constitute QWRs under RESPA, Flagstar's

16    responses nonetheless complied with any statutory duties.

17    Generally, RESPA requires servicers to respond to QWRs – in particular, RFIs – either by

18    providing the information requested or conducting a reasonable search and notifying the borrower

19    that the information is not available. 12 C.F.R. § 1024.36(d)(1).  In analyzing what this requirement

20    means, courts find that when a loan servicer provides various, though not all, requested documents

21    and offers to consider a narrower request for additional documents, the loan servicer has complied

22    with RESPA requirements.  *See O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 37 (D. Mass.

23    2014).   Further, RESPA does not require a substantive response to duplicative requests for

24    information.  *Lebeau*, 2019 WL 1077285, at *4.

25    In this case, Plaintiff – by counsel – sent two letters self-identified as a QWR requesting

26    information. *See* Pl's 1st Demand, Ans., Ex. A, ECF No. 18-1; Follow-up Letter, Ans., Ex. D, ECF

27    No. 18-4.  The first letter demanded all recordings and transcripts of Plaintiff or other people

28    concerning Plaintiff's account.  *See* Pl's 1st Demand, Ans., Ex. A, ECF No. 18-1 (Requests 11 and

- 14 -

12). The second letter repeated the same request. *See* Follow-up Letter, Ans., Ex. D, ECF No. 18-4. Plaintiff did not offer to narrow the requested information in her second letter. Plaintiff also never identified *any* specific error in the servicing of her loan or what information she needed from the requested call records to investigate that error.

Flagstar reasonably responded to Plaintiff's first letter. By letter dated October 18, 2022, Flagstar responded with over 70 pages of information, including a detailed explanation responding to Plaintiff. *See* Response Letter, Ans., Ex. C, ECF No. 18-3. Based on these facts, Flagstar objectively reasonably investigated the information requested in Plaintiff's letters and provided copious amounts of information in response.

With respect to the specific demand for call recording information, Flagstar notified Plaintiff that such information was subject to a RESPA exception to production and, therefore, would not be provided. In her subsequent letter, Plaintiff did not even *attempt* to address the RESPA exception to withhold the call recording information. Instead, Plaintiff insisted a second time in its production. Flagstar responded with additional reasons why the information could not be produced—it was confidential within employee personnel files and was not part of the loan servicing record.

Flagstar's responses to Plaintiff's letters complied with both the letter and spirit of RESPA. Plaintiff has not alleged *any* facts to the contrary – other than, on information and belief, the requested information was generally "available." However, the information's availability would not determine the reasonableness of Flagstar's response because Plaintiff's requested production failed under various exceptions that had *nothing* to do with availability. Thus, the Court should dismiss Plaintiff's claim.

**B.    Even if Plaintiff *had* plausibly alleged a RESPA violation (she has not), Plaintiff fails to plausibly allege facts showing actual damages, which is necessary to recover for a RESPA violation and to show sufficient injury-in-fact for standing.**

For the above reasons, Plaintiff does not plausibly allege that Flagstar violated a substantive RESPA requirement to produce call records. This is dispositive of the case. However, even if Plaintiff had plausibly alleged a technical RESPA violation, she failed to allege any *facts* showing that she suffered damages – or an injury in fact – needed to maintain this case.

1  Courts have recognized that a substantive RESPA violation, even if found, does not end the

2  inquiry because Plaintiff bears the burden to additionally show that she suffered *actual* harm as a

3  result of the violation. *Zhang v. Countrywide Home Loans, Inc.*, 601 F. App'x 567 (9th Cir. 2015)

4  ("Dismissal of Zhang's RESPA claim alleging inadequate responses to her Qualified Written

5  Request was proper because Zhang failed to allege facts sufficient to show that she suffered any

6  actual damages as a result of the alleged violation."); *Carswell v. JP Morgan Chase Bank N.A.*, 500

7  F. App'x 580, 582 (9th Cir. 2012) ("The district court properly dismissed the [RESPA] claim …

8  [because] Plaintiff failed to allege (and cannot plausibly allege) any actual damage, which is

9  required as an element of a RESPA claim.").  This is particularly true when there is nothing in a

10  borrower's correspondence indicating "that he was trying to correct a legitimate servicing error or

11  looking for a specific response from his servicer about his delinquent account." *Lebeau*, 2019 WL

12  1077285, at *4.  Additionally, the damages must be *caused* by the violative action.  *Moore v. Wells

13  Fargo Bank, N.A.*, 908 F.3d 1050, 1059 (7th Cir. 2018) ("Congress's use of the phrase 'as a result

14  of' dictates that there must be a causal link between the alleged violation and damages." (quoting

15  *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 719 (8th Cir. 2018))).

16  This is also potentially an Article III standing problem, because, without actual damages,

17  Plaintiff also lacks an injury-in-fact necessary for the Court to have subject matter jurisdiction.

18  *Fitch*, 2021 WL 4901909, at *8 ("Plaintiff has failed to plead any plausible facts to establish that he

19  was actually injured by Wells Fargo's allegedly noncompliant response to the June 2018 NOEs.…

20  Therefore, these damage allegations are equally insufficient for Article III standing.").

21  Despite the black letter law requirement of actual damages for a RESPA claim – much less

22  the standing requirement of an injury in fact – Plaintiff's Complaint is conspicuously devoid of

23  genuine allegations of damages incurred by the alleged RESPA violation.  *See generally* Compl.  To

24  the contrary, Plaintiff only generically alleges that the failure to produce the call records caused her

25  to "incur various expenses to respond to Defendant's deficient response and in a reasonable effort

26  to obtain compliance from Defendant"—basically, the postage and attorney's fees for counsel to

27  send the second letter. Compl. ¶ 98.

28

1    While some courts have found postage enough to plead a RESPA claim,[4] it is not enough

2    here because the letters were mailed by counsel.  *Id.* ¶ 54 (stating that counsel spent $8.62 to send

3    the duplicative second letter by Certified Mail).  When counsel pays to send a letter, that does not

4    constitute actionable damages of a Plaintiff under RESPA.  *Hogan v. Freedom Mortg. Corp.*, No.

5    521CV00782JWHSPX, 2022 WL 1439357, at *3–4 (C.D. Cal. Apr. 7, 2022) ("Plaintiffs alleged

6    that costs were incurred on account of Freedom Mortgage's failure to comply with RESPA, but they

7    have not sufficiently established that they—the individual borrowers—bore those costs."); *Mendoza*

8    *v. Wells Fargo Bank, N.A.*, No. 521CV00098JWHKKX, 2021 WL 4932732, at *3–4 (C.D. Cal.

9    Aug. 9, 2021) ("Mendoza does not cite any authority in support of the proposition that costs incurred

10   by his counsel constitute costs incurred by him—the borrower…. Accordingly, the Court concludes

11   that Plaintiffs fail to state a claim for actual damages.").

12       It makes sense that Plaintiff lacks the ability allege any *real* damages as Plaintiff herself was

13   presumably a *party* to the phone calls at issue.  Unsurprisingly, there is nothing in Plaintiff's letters

14   indicating "that [s]he was trying to correct a legitimate servicing error or looking for a specific

15   response from [the] servicer about [her] delinquent account." *Lebeau*, 2019 WL 1077285, at *4.

16   Actual damages – caused by a substantive RESPA violation – are an essential element of Plaintiff's

17   claim. Plaintiff does not allege facts to support this element.  Accordingly, Plaintiff's RESPA claim

18   must be dismissed for failure to plead a claim upon which relief could be granted.  *See Conant v.*

19   *Wells Fargo Bank, N.A.*, 60 F. Supp. 3d 99, 115 (D.D.C. 2014) (dismissing RESPA claim where

20   plaintiff failed to show actual damages resulted from failure to respond to QWRs).

21   **C.    Even if Plaintiff *could* allege a technical violation of RESPA, Plaintiff has not alleged**

22          **facts sufficient to show a "pattern and practice" of wrongdoing, which is necessary for**

23          **recovery of "additional" damages beyond Plaintiff's actual injury.**

24       Plaintiff's RESPA claim must be dismissed for failure to allege a substantive violation and

25   failure to allege any actual damages.  However, Plaintiff's fatal pleading deficiencies do not end

26

27   ─────────────────────────
     [4] Notably, even if postage of the second letter were enough to demonstrate actual damages for the
     *first* letter, it could not show actual damages for a RESPA violation following the *second* letter.
28   This means that any RESPA claim Plaintiff may bring based on Flagstar's failure to produce call
     recordings or transcripts in response to the *second* letter necessarily fails for lack of actual damages.

1    there.  Plaintiff further fails to plausibly allege a "pattern or practice" of wrongdoing to justify

2    recovery of "additional" damages.  Plaintiff makes several allegations to show that Flagstar had a

3    pattern or practice of noncompliance with RESPA.  None are sufficient.

4        Once a plaintiff has shown actual injury caused by a substantive RESPA violation, a plaintiff

5    may recover "additional damages" if the injury resulted from "a pattern or practice of

6    noncompliance with the requirements" of RESPA. 12 U.S.C. § 2605(f)(1); *In re Jackson*, 622 B.R.

7    321, 327 (Bankr. D.N.J. 2020) (observing that statutory damages "specifically requires that the

8    plaintiff sustain an actual injury").  A pattern and practice of noncompliance requires more than

9    failure to adequately respond to a single QWR.  *Wilde v. Select Portfolio Servicing, Inc.*, No. 20-

10   CV-06863-SVK, 2021 WL 6062869, at *4 (N.D. Cal. Feb. 26, 2021) (holding even two failures to

11   respond to a QWR was not a "pattern or practice" of noncompliance) (citation omitted).   The

12   standard to show a "pattern and practice" of RESPA noncompliance is particularly stringent when

13   the loan servicer ***did*** respond to a borrower's request for information, but the borrower simply

14   disagrees with the response. *Lebeau*, 2019 WL 1077285, at *5 ("[T]he Court finds no plausible

15   allegation of either a pattern or practice.… These three [QWR] responses–one responsive and two

16   showing that its previous response covered the request, and/or the request was overbroad—are not

17   enough ….").

18       Plaintiff's main theory for a pattern and practice is that Flagstar refused to provide her call

19   recordings and transcripts after she asked twice, *i.e.*, a pattern and practice of refusal.  Compl. ¶ 69.

20   Identical, duplicative requests do not constitute "new" violations of RESPA for purpose of

21   establishing a pattern and practice.  This is because a loan servicer is not required to respond to

22   duplicative requests for information. *See* 12 C.F.R. § 1024.36(f)(1)(i); *Lebeau*, 2019 WL 1077285,

23   at *4 (holding that RESPA "does not require the servicer to provide the requested information … if

24   it determines that the request for information is duplicative").  Duplicative requests are not subject

25   to RESPA requirements; therefore, failure to respond to a duplicative request *cannot* plausibly show

26   a "pattern or practice" of failing to respond to legitimate requests.

27       Further, Plaintiff alleges that she "is informed and believes" that there are other similarly

28   situated borrowers who have been denied call recordings or transcripts, which shows a pattern or

- 18 -

practice under RESPA.  Compl. ¶ 9.  Plaintiff does not allege what *facts* she is "informed" of or that she "believes" to support this conclusion – which is insufficient to state an element of a claim. *PHL Variable Ins. Co. v. Bank of Utah*, No. CIV. 12-1256 ADM/JJK, 2012 WL 4815638, at *3 (D. Minn. Oct. 10, 2012) (holding that the "empty recital" of one element of a claim is not saved by the "simply recital" of the "magic words" on "information and belief"); *accord Doe v. Does 1-10*, No. CV 14-1123 RZ, 2014 WL 12617343, at *1 (C.D. Cal. Mar. 3, 2014) ("'Information and belief' are not magic words that properly can be used to permit a wishful guess.").

In summary, Plaintiff has not alleged facts that would plausibly show that Flagstar engaged in a pattern or practice that violated RESPA's obligation to provide information to borrowers. *See Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 785 (D.N.J. 2016) (finding allegations based on information and belief insufficient to plead RESPA pattern or practice); *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 276 (finding conclusory allegations concerning defendant's business practices insufficient to state pattern or practice); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2012 WL 1372260, at *5 (E.D.N.Y. April 18, 2012) (finding that "pattern or practice" means a standard or routine way of operating and alleging even *four* RESPA violations does not show standard or routine operations).  Hence, Plaintiff's claim for additional damages must be dismissed.

**D.    Because Plaintiff's RESPA claim is fatally deficient, her UCL claim likewise fails.**

Finally, Plaintiff alleges a derivative UCL claim based on her allegation that Flagstar violated RESPA.  *See* Compl. ¶¶ 100-120 (claiming that Flagstar's alleged violation of RESPA was additionally "unlawful" and "unfair" under California law).  For the numerous reasons explained above, Plaintiff's RESPA claim is fatally deficient.  Since Plaintiff's RESPA claim fails, her derivative UCL claim likewise fails.

**V.    CONCLUSION**

WHEREFORE, Defendant Flagstar Bank, N.A., by counsel, respectfully requests that the Court dismiss all of Plaintiff's claims against Flagstar, with prejudice, and enter judgment in favor of Flagstar, and against Plaintiff, and award Flagstar such other and further relief as the Court may deem just and appropriate.

1

2

Dated:      November 3, 2023       Respectfully submitted,

3

TROUTMAN PEPPER
HAMILTON SANDERS LLP

4

By: */s/ Elizabeth Holt Andrews*

5

Elizabeth Holt Andrews
Jason E. Manning (admitted *pro hac vice*)

6

Kathleen M. Knudsen (admitted *pro hac vice*)

7

*Attorneys for Defendant*

8

Flagstar Bank, N.A.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Flagstar Bank, N.A.'s Motion for Judgment on the Pleadings; MPA
Case No. 2:23-cv-01609-KJM-CKD