UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amanda M. Alcantar,<br><br>    Plaintiff,<br><br>  v.<br><br>Flagstar Bank, N.A.,<br><br>    Defendant. | No. 2:23-cv-01609-KJM-CKD<br><br>ORDER |

  Plaintiff Amanda M. Alcantar sued defendant Flagstar Bank, N.A., a mortgage servicing company, alleging it violated the Real Estate Settlement Procedures Act ("RESPA"). Flagstar moves for judgment on the pleadings and for a stay pending the resolution of the former. The court **denies** Flagstar's motion and **denies** the motion to stay as moot.

**I. BACKGROUND**

  The court assumes the following allegations are true in response to Flagstar's motion. *See Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019).

  Flagstar acts as the servicer of Alcantar's home mortgage loan. *See* Compl. ¶ 27, ECF No. 1. After a period of financial difficulties, plaintiff contacted defendant several times between October 2021 and February 2022, asking for a reduction in her monthly mortgage payments. *See id.* ¶¶ 29–30. The parties agreed to a "purported new mortgage contract." *Id.* ¶ 31. But contrary to plaintiff's request, the monthly mortgage payment increased. *See id.* Plaintiff requested her

1

mortgage be placed in partial claim status, as allowed by the Secretary of Housing and Urban Development. *See id.* ¶ 32; Mem. at 2.

In March 2022, defendant sent plaintiff a contract to place her mortgage in partial claim status, which plaintiff signed and returned. *See* Compl. ¶ 33. Defendant informed plaintiff the new mortgage terms would take effect and appear on her May 2022 payment. *See id.* ¶ 34. But when plaintiff received her monthly statement, the new loan terms "were nowhere to be found." *Id*. ¶ 36. Instead, the statement informed plaintiff she was now delinquent on her loan and more than $90,000 was due immediately. *See id.* ¶ 37. That same day, plaintiff filed a complaint with the Consumer Financial Protection Bureau. *See id.* ¶ 38. Flagstar responded to the complaint and explained there had been an error. *See id.* ¶¶ 39–40.

Plaintiff then mailed Flagstar a qualified written request ("QWR"). *See id.* ¶ 41. In the request, plaintiff "included her name, her home address, her loan account number, a statement disputing the validity of her debt, and requests for documents and information associated with her account," which included a "copy of any and all [audio] recordings of [Plaintiff] or any other person concerning [Plaintiff's] account" as well as a "copy of any and all transcripts of conversations with [Plaintiff] or any other person concerning [Plaintiff's] account[.]" *Id.* ¶ 43. Defendant received the request on October 5 but did not respond within five days, as required by 12 U.S.C. § 2605(e)(1)(A). *See id.* ¶¶ 45–46. Defendant eventually provided information in response to the request, but it denied the request for audio recordings or transcripts of the recordings because defendant deemed it "overbroad or unduly burdensome to provide[.]" *Id.* ¶¶ 48–50.

In a follow up letter on November 16, plaintiff again requested the same audio recordings. *See id.* ¶¶ 52–53. She mailed the letter through the United States Postal Service, which cost her $8.62. *See id.* ¶ 54. Defendant again denied the request, stating the audio recording and transcripts are "confidential, proprietary, and/or privileged[.]" *Id.* ¶ 57.

Plaintiff then filed this suit for violation of RESPA and California's Unfair Competition Law (UCL). *See id.* ¶¶ 89–120. Defendant seeks judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See generally* Mem. Plaintiff opposes the motion. *See* Opp'n., ECF

2

1  No. 22.  She asks the court for leave to amend the complaint under Federal Rule of Civil

2  Procedure 15 if the complaint is deficient.  *See id.* at 20.  Defendant has replied.  *See* Reply, ECF

3  No. 23.  The court submitted the motion without a hearing.  *See* Min. Order, ECF No. 26.

4  Defendant also has moved to stay discovery while its motion for judgment on the pleadings is

5  pending, *see* Mot. Stay, ECF No. 39, which motion plaintiff also opposes, *see* Opp'n, ECF No.

6  31, and defendant has replied, *see* Stay Reply, ECF No. 32.  The court submitted the motion to

7  stay without a hearing as well.  *See* Min. Order Mot. Stay, ECF No. 34.

8  **II.    LEGAL STANDARD**

9  Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are

10  closed—but early enough not to delay trial[.]"  Fed. R. Civ. P. 12(c).  The "same standard of

11  review applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion."  *Howell v. Leprino*

12  *Foods Co.*, No. 18-01404, 2020 WL 704778 at *1 (E.D. Cal. Feb. 12, 2020) (citing *Dworkin v.*

13  *Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). The court draws reasonable

14  inferences in the non-moving party's favor and accepts the complaint's allegations as true.  *See*

15  *Hines*, 914 F.3d at 1227.  Courts may grant a Rule 12(c) motion with or without leave to amend.

16  *See Gregg v. Dep't of Pub. Safety*, 870 F.3d 883, 889 (9th Cir. 2017) (while Rule 15 provides for

17  granting leave to amend freely when justice requires, leave may be denied where futile).  As

18  required by Rule 12(c), the court looks only to the pleadings and does not assess any factual

19  record developed through summary judgment practice.

20  **III.   ANALYSIS**

21  Under RESPA, a loan servicer "of a federally related mortgage loan" must respond to a

22  "qualified written request from the borrower . . . for information relating to the servicing of such

23  loan" within five days.  12 U.S.C. § 2605(e).  A loan servicer's obligation to respond under

24  RESPA is triggered if the request "(1) reasonably identifies the borrower's name and account, (2)

25  either states the borrower's 'reasons for the belief . . . that the account is in error' or 'provides

26  sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks

27  'information relating to the servicing of [the] loan.'"  *Medrano v. Flagstar Bank, FSB*, 704 F.3d

28  661, 666 (9th Cir. 2012) (quoting 12 U.S.C. § 2605(e)(1)(A)–(B)) (alterations in original).

3

"Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, [ ] and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).  Under RESPA, "servicing . . . does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement," because "[s]uch events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." *Medrano*, 704 F.3d at 666–67 (emphasis omitted). Thus, "letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." *Id.* at 667. Moreover, "[a] request for modification of a loan agreement, like one for rescission, does not concern the loan's servicing." *Id.* at 667.

### A. Plaintiff Filed a Qualified Written Request.

The parties dispute whether plaintiff's letters were valid QWRs. *See* Compl. ¶¶ 41–46. Those letters are properly understood as a single QWR, as the second merely followed up on the first. *See Ruegsegger v. Caliber Home Loans, Inc.*, No. 17-0907, 2018 WL 5993857, at *25 (C.D. Cal. Apr. 30, 2018) (regarding an original and follow up letter as one QWR).

The Ninth Circuit's decision in *Medrano* is instructive. The court held section 2605(e) "does not explicitly require any 'magic' words," as such a requirement "would be inconsistent with Congress' intent." *Medrano*, 704 F.3d at 666. "[A]ny request for information made with sufficient detail," including "[a]ny reasonably stated written request for account information[,]" is a valid QWR. *Id.* at 666 (citation and marks omitted). And in defining servicing procedures, the Ninth Circuit held the term "should be 'construed liberally' to serve the statute's remedial purpose." *Id.* at 665–66 (citing *In re Herrera*, 422 B.R. 698, 711–712 (B.A.P. 9th Cir. 2010), *aff'd sub nom. In re Monroy*, 605 F.3d 1300 (9th Cir. 2011).

Here, the QWR identified plaintiff's name and account number, Compl. ¶ 43, specifically requested "[a] copy of any and all recordings of [Plaintiff] or any other person concerning [Plaintiff's] account" and "[a] copy of any and all transcripts of conversations with [Plaintiff] or

4

1  any other person concerning [Plaintiff's] account," *id.*, and requested information regarding the
2  servicing of her loan, *id.* ¶ 44. RESPA required defendant to timely respond within five days.
3  *See* 12 U.S.C. § 2605(e)(1)(A).
4        Contrary to defendant's argument, plaintiff's requests for information regarding the
5  validity of the loan do not relieve defendant of its obligation under RESPA to respond to those
6  parts of her request regarding loan servicing. *See Pendleton v. Wells Fargo Bank, N.A.*, 993 F.
7  Supp. 2d 1150, 1153 (C.D. Cal. 2013). Defendant also argues "the call recordings and transcripts
8  requested, to the extent they even existed, were not kept as a component of the loan servicing file
9  but only in employee personnel files." Mem. at 9 (emphasis and citation omitted). However, as
10 plaintiff points out, RESPA makes no exceptions based on a servicer's filing or archiving
11 practices. *See* Opp'n at129. Even if defendant stored the requested information in a file it created
12 for a different purpose, it was still required to provide it to plaintiff if it was "information
13 regarding the servicing of her loan." Compl. ¶ 44. Finally, defendant claims plaintiff's letters
14 were improperly repetitive. *See* Mem. at 9–10. But multiple letters requesting the same
15 information can be valid QWRs under RESPA. *See Brien v. J.P. Morgan Chase Bank, N.A.*, No.
16 10-00374, 2010 WL 11597832 at *6 (C.D. Cal. Oct. 14, 2010).
17       For these reasons, the court finds plaintiff filed a valid QWR. *See Medrano*, 704 F.3d at
18 665–66; *Hueso v. Select Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210, 1222 (S.D. Cal. 2021).
19       **B.**    **Defendant was Required to Respond to Plaintiff's Demand Letters.**
20       Defendant argues it was not required to respond to plaintiff's demand letters because the
21 requests "fell under multiple exceptions" to the requirement servicers respond to QWRs. Mem. at
22 11. Defendant is correct that servicers need not respond to QWRs if the information requested is
23 (1) duplicative; (2) confidential, proprietary or privileged information; (3) irrelevant;
24 (4) overbroad or unduly burdensome; or (5) untimely. *See* 12 C.F.R. § 1024.36(f)(1)(i)–(v).
25 Defendant contends plaintiff's demand for all recordings and transcripts was "overbroad or
26 unduly burdensome." Mem. at 11 (citing Response Letter, Ex. C to Answer, ECF No. 18-3). As
27 noted, defendant also contends the information requested was "confidential, proprietary, and/or

5

privileged because it was kept as part of the employee personnel files and was 'not a component of the loan servicing file.'" *Id.* (citing Nov. 29 Letter, Ex. D to Answer, ECF No. 18-6).

In response, plaintiff cites *Barbano v. JP Morgan Chase Bank, N.A.*, No. 19-1218, 2019 WL 8883344, at *4 (C.D. Cal. Dec. 23, 2019), to show the court in that case found a similar request plausibly alleged a RESPA violation. However, in *Barbano*, the court clarified its decision was based on plaintiff's "sen[ding] further correspondence regarding the recordings or clarifying the scope of the request for recordings," which is not the allegation here. *Id.* at *4. In contrast here, plaintiff sent a follow up letter that mirrored her original request.

Despite this distinction, the court agrees plaintiff has adequately alleged her request was neither overbroad nor burdensome. To start, the overbroad-or-unduly-burdensome exception in the regulation itself notes that "[t]o the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements[.]" 12 C.F.R. § 1024.36(f)(1)(iv). Defendant does not explain why it could not reasonably identify a valid request within the QWR. Moreover, although defendant claims the QWR was overbroad and burdensome, plaintiff alleges she made only a "handful" of calls. *See* Compl. ¶¶ 66–68 (alleging transcript and recordings amounted to "a handful of telephonic conversations," which would be "access[ible]" as they would have been recorded by defendant in the ordinary course of business). Taken in the light most favorable to plaintiff, it is at least plausible a request for a "handful" of recordings and transcripts is not overbroad or unduly burdensome.

Nor does the statute's confidentiality exception excuse a response. Defendant argues it stored the information requested in personnel files that include "confidential, proprietary, and/or privileged" information. Mem. at 12; Letter (Nov. 23, 2022), Ex. F to Am. Answer, ECF No. 18-5. Defendant does not explain what information was confidential, proprietary or privileged and why. The nature of plaintiff's request implicates no confidentiality concerns. Plaintiff was requesting recordings or transcripts of past conversations in which she participated, after all. In any event, defendant does not explain why it could not have produced portions of the files that were not confidential, proprietary or privileged. Defendant cites no cases, nor has the court found

any, allowing a servicer's choice of filing location alone to determine whether information is confidential, proprietary and/or privileged in and of itself. Nothing in the pleadings permits the court to conclude at this stage defendant "reasonably determined" the exceptions on which it relies applied to the QWR here. *See Aduayi v. PHH Mortg. Servs.*, No. 23-10857, 2024 WL 1018441, at *7 (D. Mass. Mar. 8, 2024). The court finds plaintiffs "plausibly allege a RESPA violation with regard to the asserted failure to provide any audio recordings" and transcripts. *Barbano*, 2019 WL 8883344, at *4.

Defendant also argues even if the court determined it was required to respond to the QWR under RESPA, defendant did reasonably respond. Mem. at 14–15. However, the complaint plausibly alleges defendant "could have replied with any recordings it had," "which would not have been overly burdensome," or privileged, but they have not. *See Barbano*, 2019 WL 8883344, at *4; *see generally* Compl.

In sum, construing the allegations in the light most favorable to plaintiff, it is plausible to infer defendant did not reasonably respond as required under RESPA. *Rey v. OneWest Bank, FSB*, No. 12-02078, 2013 WL 1791910, at *3 (E.D. Cal. Apr. 26, 2013) (finding plaintiff's letter was a QWR despite being broad in scope because it "provided the servicer with 'sufficient detail' regarding information sought by the borrower"). Accordingly, the court finds the complaint plausibly alleges defendant was required to respond to plaintiff's QWR.

    **C.    Plaintiff Has Sufficiently Pled Damages and a Pattern or Practice of Wrongdoing.**

Defendant also argues plaintiff has not alleged actual damages. Actual damages are a necessary part of claim "under section 2605 of RESPA." *See Yuhre v. JP Morgan Chase Bank FKA Washington Mut.*, No. 09-02369, 2010 WL 1404609 (E.D. Cal. Apr. 6, 2010) (quoting *Pok v. Am. Home Mortg. Servicing, Inc.*, No. 09-2385, 2010 WL 476674, at *5 (E.D. Cal. Feb. 3, 2010)). A breach of RESPA duties is not itself enough. *Id.* Instead, plaintiff "must, at a minimum, also allege that the breach resulted in actual damages." *Id.* (citation and marks omitted). But this requirement "is interpreted liberally." *Id.* (citing *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, No. 09-1504, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 3, 2009)).

Here, plaintiff alleges she paid out of pocket for postal fees.  *See* Compl. ¶¶ 54, 62. Courts have recognized "postage costs as actual damages when incurred as a result of the RESPA violation."  *See, e.g.*, *Read v. Cenlar FSB*, No. 21-504, 2021 WL 6618659 (C.D. Cal. Sept. 30, 2021); *Ponds v. Nationstar Mortg., LLC*, No. 15-8693, 2016 WL 3360675, at *6 (C.D. Cal. June. 3, 2016).  Defendant argues plaintiff's attorney paid the postage for the second letter.  Mem. at 16–18.  However, plaintiff's complaint alleges she incurred the cost, Compl. ¶ 54, and her opposition clarifies as much, *see* Opp'n at 15–16.

Plaintiff also seeks statutory damages.  Defendant contends plaintiff has not alleged a pattern and practice of wrongdoing, which is necessary for an award of statutory damages under RESPA.  *See* Mem. at 17–19; *see also* 12 U.S.C. § 2605(f)(1).  "[A] single alleged failure to respond to a QWR is not a pattern or practice entitling [a plaintiff] to statutory damages."  *Asare-Antwi v. Wells Fargo Bank, N.A.*, 855 F. App'x 370, 373 (9th Cir. 2021).  But "[a]llegations of a uniform corporate policy are frequently used to establish a 'pattern or practice.'"  *Ponds*, 2016 WL 3360675, at *7.

Here, plaintiff has plausibly alleged a pattern or practice of wrongdoing.  *See* Compl. ¶¶ 61, 62.  She alleges several other consumers have experienced "similar troubling conduct."  *See id.* at 62.  Further, plaintiff is "informed and believes . . . that Defendant has refused to produce recordings for possibly hundreds if not thousands of customers."  *See id.* ¶ 60.  These allegations suffice at this early stage.  *See Read*, 2021 WL 6618659, at *11.

**D.     Plaintiff Plausibly Filed a UCL Claim.**

Defendant's arguments related to the UCL claim are derivative of its arguments about the RESPA claim.  *See* Mem. at 19.  Having found plaintiff sufficiently pled her RESPA claim, the court denies defendant's motion as to plaintiff's claim under the UCL.

**IV.    CONCLUSION**

The court **denies** defendant's motion for judgment on the pleadings and **denies** defendant's motion for a stay as **moot**.

/////

/////

8

1    This order resolves ECF No. 20 and 30.

2    IT IS SO ORDERED.

3   DATED: September 16, 2024.

                                      CHIEF UNITED STATES DISTRICT JUDGE